Slip Op. 15-8

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| JBLU, INC., | |
| Plaintiff, | Before: Nicholas Tsoucalas, |
| | Senior Judge |
| v. | |
| | Court No. 12-00042 |
| UNITED STATES, | |
| Defendant. | |

OPINION

[ Plaintiff's motion for partial summary judgment is denied. Defendant's cross-motion for summary judgment is granted. ]

Dated: January 28, 2015

Elon A. Pollack and Mandy A. Edwards, Stein Shostak Shostak Pollack & O'Hara, LLP, of Los Angeles, CA, for Plaintiff.

Alexander Vanderweide, Trial Attorney, Civil Division, U.S. Department of Justice, of New York, for defendant.  With him on the brief were Stuart F. Delery, Assistant Attorney General, and Amy M. Rubin, Assistant Director.  Of counsel on the brief was Michael W. Heydrich, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

   **Tsoucalas, Senior Judge:**  This case is before the court

on cross-motions for summary judgment.  See Pl.'s Mot. for Partial

Summ. J., ECF No. 21 ("Pl.'s Br."); Def.'s Cross-Mot. for Summ.

J., ECF No. 24 ("Def.'s Br.").  Plaintiff JBLU, Inc., ("JBLU" or

"Plaintiff") challenges the decision of Defendant U.S. Customs and

Border Protection ("Customs" or "Defendant") to issue Notices to

Mark and/or Redeliver for the goods in subject entries.  See

Summons (Feb. 7, 2012), ECF No. 1.  Plaintiff claims that the presence of its trademarks trigger the marking requirements of 19 C.F.R. § 134.47.  Id.  Therefore, Plaintiff insists that the subject merchandise is properly marked with the country of origin and is not required to be re-labeled.  Id.

## BACKGROUND

       The following facts are not in dispute.  Plaintiff, JBLU, Inc., is a California corporation registered in the County of Los Angeles doing business as C'est Toi Jeans USA.  Compl. at ¶¶ 1,4,5, September 21, 2012, ECF No. 5.  The subject merchandise consists of seventeen shipments of jeans, exported from China between September 11 and October 20, 2010, and entered in the port of Los Angeles.  Compl. at ¶¶ 6,8; Answer ¶¶ 6, 8, Feb. 25, 2013, ECF No. 10.  The instant action concerns eleven of the seventeen shipments. Compl. at ¶ 7; Answer at ¶ 7.  Subsequent to inspecting samples of the jeans, Customs issued Notices to Mark and/or Redeliver to JBLU, pursuant to 19 C.F.R. § 134.46, stating that the jeans were not legally marked with the country of origin.  Compl. at ¶ 10,11; Answer at ¶ 10,11.

       The jeans display one of the following markings which are embroidered on the inside of the waistband: "C'est Toi Jeans Los Angeles," "CT Jeans USA," and "C'est Toi Jeans USA."  Pl.'s

Br., Photographs of Representative Jean Samples, Ex. 2 at 37-49, July 3, 2014, ECF No. 21.  The trademark applications were filed on October 8, 2010.  Pl.'s Br., Trademark Applications for C'est Toi Jeans USA and CT Jeans USA filed with the U.S. Patent and Trademark Office ("USPTO") and Trademark Registration Certificates for C'est Toi Jeans USA and CT Jeans USA, Ex. 4 at 59.  The trademark applications claimed that the two marks had been used in commerce since at least July 1, 2005.  Id. at 60.  The trademarks were registered with the USPTO on May 31, 2011 and June 14, 2011. Id. at 66, 74.

JBLU filed protests on November 5, 2010 and November 22, 2010 contesting the Notices to Mark and/or Redeliver the jeans. See HQ H137556.  In its protest, JBLU insisted that the less stringent country of origin marking requirements of 19 C.F.R. § 134.47 should apply instead of 19 C.F.R. § 134.46, and therefore the subject jeans were legally marked.  Id.

Customs denied Plaintiff's protests in part.  HQ 137556 (June 13, 2011).  Customs held that the jeans displaying the markings "C'est Toi Jeans USA" and "CT Jeans USA" were entered before Plaintiff submitted its trademark applications to USPTO and therefore were not properly marked with the country of origin. Id.  Additionally, Customs determined that the jeans displaying

the marks entered on or after JBLU's applications were filed with the USPTO were legally marked.  Id.  Customs further determined that it has not previously accepted evidence of use in commerce as conclusive evidence of a trademark.  Id.

## JURISDICTION and STANDARD OF REVIEW

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1581(a) (2012).  Summary judgment is appropriate where, "the pleadings, depositions . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Anderson v. Liberty, Inc., 477 U.S. 242, 247 (1986); See also Torrington Co. v. United States, 19 CIT 1189, 1191, 903 F.Supp. 79, 81 (1995).

More specifically, when reviewing an agency's interpretation of its regulations, the court must give substantial deference to the agency's interpretation, Michaels Stores, Inc. v. United States, 766 F.3d 1388, 1391 (Fed. Cir. 2014) (citing Torrington Co. v. United States, 156 F.3d 1361, 1363-64 (Fed. Cir. 1998)), according it "'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, (1994) (citations omitted); accord Viraj Group v. United States, 476 F.3d 1349, 1355 (Fed.

Cir. 2007).   In this context, "[d]eference to an agency's interpretation of its own regulations is broader than deference to the agency's construction of a statute, because in the latter case the agency is addressing Congress's intentions, while in the former it is addressing its own." Viraj, 476 F.3d at 1355 (quoting Gose v. U.S. Postal Serv., 451 F.3d 831, 837 (Fed. Cir. 2006).

## DISCUSSION

Before the court are the following questions: (1) whether the marking requirements of 19 C.F.R. § 134.46 or 19 C.F.R. § 134.47 apply to the subject merchandise; (2) whether any genuine issues of material fact remain with regards to Plaintiff's compliance with the controlling regulation.

### I.   Controlling Marking Regulation

Merchandise imported into the United States shall be marked in a conspicuous space as legibly, indelibly, and permanently as the nature of the article will permit, to indicate to an ultimate purchaser in the United States the English name of the country of origin.  See 19 U.S.C. § 1304(a) (2012).  The Customs regulations implementing the requirement and exceptions of 19 U.S.C. § 1304 are set forth in 19 C.F.R. § 134.  Specifically, 19 C.F.R. § 134.46 provides for marking requirements when the name of a country other than country of origin appears on merchandise:

In any case in which the words "United States," or "American," the letters "U.S.A.," any variation of such words or letters, or the name of any city or location in the United States, or the name of any foreign country or locality other than the country or locality in which the article was manufactured or produced appear on an imported article or its container, and those words, letters or names may mislead or deceive the ultimate purchaser as to the actual country of origin of the article, there shall appear legibly and permanently in close proximity to such words, letters or name, and in at least a comparable size, the name of the country of origin preceded by "Made in," "Product of," or other words of similar meaning.

19 C.F.R. § 134.46. Additionally, 19 C.F.R. § 134.47 provides as follows:

When as part of a trademark or trade name or as part of a souvenir marking, the name of a location in the United States or "United States" or "America" appear, the article shall be legibly, conspicuously, and permanently marked to indicate the name of the country of origin of the article preceded by "Made in," "Product of," or other similar words, in close proximity or in some other conspicuous location.

19 C.F.R. § 134.47.

       Plaintiff argues that because 19 C.F.R. § 134.47 and the pertinent Customs laws and regulations are silent, "it is logical that the definition of trademark is provided by either federal statute or the common law." Pl.'s Br. at 9, 11. Specifically, Plaintiff argues that the definition of "trademark" is supplied by the Lanham Act for the purposes of 19 C.F.R. § 134.47. Id. at 2; See 15 U.S.C. § 1127 (2012). The Lanham Act defines trademark as:

> [A]ny word, name, symbol, or device, or any combination thereof--
>
> (1) used by a person, or
> (2) which a person has a bona fide intention to use in commerce and applies to register on the principal register . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.

15 U.S.C. § 1127. Plaintiff insists that the Lanham Act's definition provides for trademarks that are actually used in Commerce, intended to be used, or marks that are pending registration with the USPTO. Pl.'s Br. at 10. Furthermore, Plaintiff notes that the Lanham Act's definition of trademark is "essentially the same as the common law definition," and are both intended to protect unregistered trademarks. Id. at 10–11. Accordingly, Plaintiff contends that the Lanham Act should define trademark as it pertains to 19 C.F.R. § 134.47. Id. at 11.

The court disagrees. In the instant case, Plaintiff concedes that 19 C.F.R. § 134.47 is silent as to the definition of the term "trademark." See Pl.'s Br. at 12. As such, the court must give Customs' interpretation of 19 C.F.R. § 134.47 substantial deference, unless it is "plainly erroneous or inconsistent with the regulation.'" See Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, (1994) (citations omitted); accord Viraj Group v. United States, 476 F.3d 1349, 1355 (Fed. Cir. 2007).

Customs interprets the term trademark in the regulation as including either registered trademarks or marks subject to a pending application.  See HQ H137556 (June 13, 2011).  In its ruling, Customs stated that it:  "has long accepted an application filed with the [USPTO] as sufficient evidence of a trademark for purposes of 19 C.F.R. § 134.47 because the regulation does not specify what evidence is necessary to establish a trademark."  HQ H137556 (June 13, 2011).  Plaintiff makes no effort to view Customs' interpretation of the term at issue through the prism of the controlling standard of review discussed above, instead Plaintiff turns to the Lanham Act offering it as a "logical" interpretation of the term trademark within the regulation.  See Pl.'s Br. at 9.  Although Plaintiff offers one possible interpretation of the term trademark, Plaintiff was charged with the task of demonstrating that Customs' interpretation was "plainly erroneous or inconsistent with the regulation.'"  See Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, (1994) (citations omitted); accord Viraj Group v. United States, 476 F.3d 1349, 1355 (Fed. Cir. 2007).

Moreover, Plaintiff insists that Customs' interpretation of the term "trademark" is inconsistent with prior Customs rulings. The court disagrees.  Plaintiff appears to have misinterpreted the

rulings on which it relies to support its contention. Specifically, Plaintiff contends that both HQ 731707 and HQ 733617 support its claim that a pending trademark application or registration is not necessary for purposes of country of origin marking under 19 C.F.R. § 134.47.  Pl.'s Br. at 13-14, Ex. 12 at 145.  First in HQ 731707, Customs found that the mark "American Trouser" constituted a trademark for the purpose of 19 C.F.R. § 134.47.  HQ 731707 (July 26, 1989).  Second, in HQ 733617, Customs found that the mark "Engineered in the USA™" was part of a claimed trademark and thus satisfied the requirements of 19 C.F.R. § 134.47.  HQ 733617 (July 30, 1991).  Ultimately, both HQ 731707 and HQ 733617 were silent as to whether the trademarks at issue were presented to Customs as a registered trademark, a pending application, or an abandoned application, and thus do not provide support for or against the Plaintiff's argument.

Additionally, Plaintiff claims that both HQ 734455 and HQ 734644 stand for the proposition that registered trademarks are not required for 19 C.F.R. § 134.47 to apply.  Pl.'s Br. at 14–15.  Specifically, Plaintiff insists that the rulings support the notion that "intent to use [an] application for a trademark filed with the USPTO is acceptable evidence of use to qualify as a trademark under 19 C.F.R. § 134.47."  Id. at 14.  In both of these

rulings a pending application was before the agency, thus it is unclear to the court how either of these rulings are inconsistent with Customs' interpretation of the term "trademark." <u>See</u> HQ 734455; <u>See</u> HQ 734644.

Moreover, Plaintiff relies on HQ 541445 and HQ 541685 to support its contention that when defining the term trademark, for the purposes of country of origin, Customs looks to the Lanham Act. Plaintiff's reliance is misplaced. The instant action involves the definition of a trademark with regards to the country of origin marking requirements, as opposed to in HQ 541445, where Customs considered whether royalty payments relating to a trademark are dutiable. HQ 541445 (Oct. 13, 1977). In addition, HQ 541685 considered whether royalty payments for use of one's name, likeness and endorsement, are included in the dutiable value of merchandise. HQ 541685 (June 29, 1977). Therefore, both of these Customs rulings address intellectual property rights issues that are unrelated to the regulation at issue in the instant case.

Accordingly, Customs did in fact demonstrate that its definition of "trademark" has been consistently applied in prior headquarter rulings. E.g., HQ 561060 (Nov. 3, 1998) (concluding that "Customs has accepted a filed application with the U.S. Patent and Trademark Office as sufficient evidence of a trademark for

purposes of 19 C.F.R. § 134.47 since the regulation does not specify what evidence is necessary to establish a trademark."); accord HQ 734073 (July 10, 1991); HQ 734066 (July 15, 1991); HQ 734644 (July 1, 1992); HQ 734455 (July 1, 1992); HQ 735085 (June 4, 1993); HQ 735180 (May 17, 1994); HQ 735019 (June 28, 1998); and HQ 561060 (November 3, 1998).

        Furthermore, the court finds that Customs' interpretation of 19 C.F.R. § 134.47 is consistent with the stated purpose of the regulation and 19 U.S.C § 1304.  The purpose of both 19 C.F.R. § 134.46 and 19 C.F.R. § 134.47 is to prevent the ultimate purchaser from being misled or deceived when the name of a country or place other than the country of origin appears on imported merchandise.  See HQ H016234 (Mar. 3, 2009); see HQ 563175 (Mar. 31, 2005).  Conversely, unlike the regulations at issue here, the purpose of the Lanham Act is to protect intellectual property rights by preventing consumer confusion with regards to the producer of the merchandise.  See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 534–35 (1987). Accordingly, since Customs' interpretation of the regulation, discussed above, is consistent with the regulation and its stated purpose, it must be given controlling weight.  See Auer v. Robbins, 519 U.S. 452, 461–63, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997)

(agency interpretation of its own regulation must be given controlling weight unless plainly erroneous or inconsistent with the regulation); see also White v. United States, 543 F.3d 1330, 1333–34 (Fed. Cir. 2008).

Because Customs' interpretation of the regulation was not plainly erroneous or inconsistent with the regulation, the court defers to Customs' reading of the term trademark concluding that trademarks are either registered or marks that are subject to pending applications. See id. As Plaintiff's markings on their merchandise did not constitute trademarks pursuant to 19 C.F.R. § 134.47, the court agrees with Customs that 19 C.F.R. § 134.46 controls here.

## II. Issues of Material Fact

The final question the court must address is whether any genuine issues of material fact remain with regards to Plaintiff's compliance with 19 C.F.R. § 134.46.

First, Plaintiff argues that there is a genuine issue of material fact because Customs has not offered evidence that an ultimate consumer would be confused or misled with regards to the country of origin of the jeans. Pl.'s Mem. in Reply to Government's Opp'n to Pl.'s Mot. for Partial Summ. J. and in Opp'n to Government's Cross-Mot. for Summ. J. at 12, Oct. 20, 2014, ECF

No. 25 ("Pl.'s Reply").  Specifically, Plaintiff insists that the "stricter standard of 'close proximity' is only triggered if a locality term is found on the article that may mislead or deceive the ultimate customer as to the country of origin."  Id. (citing HQ 561060 (Nov. 3, 1998); Country of Origin Marking, 62 Fed Reg. 44211, 44211 (Aug. 20, 1997)) (internal footnotes omitted). Plaintiff contends that "because a consumer can easily find the country of origin marking, 'Made in China' upon casual inspection of the inside waistband of the jeans, a consumer will not be confused."  Id.

The court disagrees.  Plaintiff fails to recognize that by displaying text representing a locality different from the merchandise's country of origin, the text may "mislead or deceive the ultimate purchaser as to the actual country of origin of the article."  19 C.F.R. § 134.46.  Moreover, the regulation does not require Customs to provide evidence demonstrating that a consumer is being misled, rather the presence of the text itself may be sufficient to mislead the consumer, unless there appears "legibly and permanently in close proximity to such words, letters or name, and in at least a comparable size, the name of the country of origin preceded by 'Made in,' 'Product of,' or other words of similar meaning" informing the consumer of the country of origin

of the merchandise.  19 C.F.R. § 134.46.  Additionally, Plaintiff
appears to misinterpret HQ 561060.  Pl.'s Reply at 12-13.  Unlike
here, in HQ 561060, Customs determined that pursuant to 19 C.F.R.
§ 134.47 it was "unnecessary to place an additional country of
origin marking on the hangtag containing a trademark with a non-
origin geographical reference."   HQ 561060.   Contrary to
Plaintiff's assertion, this ruling does not stand for the premise
that "if the close proximity requirement is not triggered, then
the conspicuous location standard applies." 19 C.F.R. § 134.46.
As discussed above, 19 C.F.R. § 134.46 outlines specific marking
requirements that an importer must follow when the name of a
country, other than country of origin, appears on merchandise.
Id.  Nowhere in the regulation is "upon casual inspection" of the
merchandise discussed as a suitable marking alternative.  See id.

        Subsequently, Plaintiff argues that the Defendant is
"not entitled to a judgment as a matter of law because Customs'
decision to require the jeans to be remarked after importation is
contrary to 19 C.F.R. § 134.32(o) because remarking would be
'economically prohibitive.'"  Pl.'s Reply at 13.

        Merchandise may be exempted from the marking requirement
if it "cannot be marked after importation except at an expense
that would be economically prohibitive." 19 C.F.R. § 134.32(o).

Notwithstanding the fact that arguments raised for the first time in a reply brief are not properly before this court, United States v. Ford Motor Co., 463 F.3d 1267, 1276-77 (Fed. Cir. 2006), and such arguments are usually deemed to be waived, Novosteel SA v. United States, 284 F.3d 1261, 1273-74 (Fed. Cir. 2002); see Ford Motor Co., 463 F.3d at 1276-77, Plaintiff has not provided evidence supporting its conclusory claim that remarking the jeans would be economically prohibitive. The court finds that Plaintiff's bare assertions made for the first time in its reply brief do not constitute an issue of material fact in the instant case.

As discussed above, because the subject merchandise do not display a trademark in accordance with 19 C.F.R. § 134.47, the subject merchandise must satisfy the marking requirements of 19 C.F.R. § 134.46. First, the jeans display the logos "C'est Toi Jeans USA," "CT Jeans USA," and "C'est Toi Jeans Los Angeles" in various styles, scripts and dimensions, on the backs of some of the jeans, on the care label stitched into the front waistbands of the jeans, on the hang-tags affixed to the outside of the jeans, on the pocket linings of the jeans, and on the back waistbands of the jeans. See Pl.'s Br. at Ex. 2; HQ H137556. Secondly, the "Made in China" labels are only sewn into the front waistband of

the jeans, several inches from the zipper, above or next to the care label. <u>Id.</u>  Thus, the country of origin is not displayed in close proximity to each "USA" or "Los Angeles" logo on the backs of the jeans, pocket linings, back waistbands, and hang-tags. <u>Id.</u> Finally, the "Made in China" label is in smaller print-size than the "C'est Toi Jeans USA," "CT Jeans USA," and "C'est Toi Jeans Los Angeles" logos embroidered into the back waistbands of the jeans and displayed on the jean hang-tags. <u>Id.</u>  Accordingly, the subject merchandise is not properly marked pursuant to 19 C.F.R. § 134.46.  Because the markings on Plaintiff's merchandise did not comply with 19 C.F.R. § 134.46, the court finds that Customs Notices to Mark and/or Redeliver were properly issued.

<strong>CONCLUSION</strong>

For the foregoing reasons, the court grants Defendant's cross-motion for summary judgment and denies Plaintiff's motion for partial summary judgment.  Judgment will be entered accordingly.

/s/ Nicholas Tsoucalas
**Nicholas Tsoucalas**
**Senior Judge**

**Dated:**  January 28, 2015
      **New York, New York**